**ESSEX INSURANCE COMPANY**
Plaintiff

v.

**INLAND MARINE SALES, LLC; Chris Warman; Diamond Lakes Boat Transport, Inc.; Randy Schroeder; Patrick and Linda Flowers; and Insurance Company of North America**
Defendants

No. 04–6079.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

March 3, 2005.

Beverly A. Rowlett, Little, AR, for Plaintiff.

Gary M. Draper, Mark Justin Riable, Little Rock, AR, Douglas E. Gossow, St. Louis, MO, Lance Garner, Hot Springs, AR, for Defendants.

### MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Essex Insurance Company (hereinafter "Essex") brings this diversity action seeking a declaratory judgment that an insurance policy it issued to Inland Marine Sales, LLC (hereinafter "Inland") provides no coverage for a property damage judgment rendered against the insured on May 19, 2004. Currently before the Court are the parties' cross-motions for summary judgment. (Docs. 19 and 40.) For the reasons stated herein, Plaintiff's motion is

DENIED, and Defendant's motion is GRANTED.

## Background

The following facts are not disputed:

1. Inland is a limited liability company owned by Richard Meyer and George Parker.

2. On May 19, 2004, the Court entered a judgment after a bench trial held in the related case of *Insurance Company of North America v. Inland Marine Sales, LLC, Chris Warman, Diamond Lakes Boat Transport, Inc., Randy Schroeder, and the Ouachita Shores Group, LLC* (No. 02–CV–6224).[1] That case, which forms the basis for the present suit, involved the negligent loading of a houseboat insured by the Insurance Company of North America (owned by Patrick and Linda Flowers) and resulted in damages in Plaintiff's favor in the amount of $93,329.84.

3. In that case, the Court found that Chris Warman was Inland's agent for the task of removing the houseboat from the water for inspection of its motor by a mechanic. In order to remove the boat, Warman hired Randy Schroeder, who owned Diamond Lakes Boat Transport. (Doc. 19 Ex. 3 p. 4.) During the course of their efforts, the boat fell off of the trailer and came to rest on the boat ramp and partially in the water. (Doc. 19 Ex. 3 p. 6.)

4. The Court determined Chris Warman and Randy Schroeder were at fault and jointly and severally liable to the Insurance Company of North America. Accordingly, the Court found Inland was vicariously liable for Warman's negligence, and Diamond Lakes Boat Transport, Inc. was vicariously liable for Schroeder's negligence. For purposes of contribution and indemnity, the Court determined the percentage of Warman and Inland's fault was 70% and Schroder's and Diamond Lakes Boat Transport's was 30%. (Doc. 19 Ex. 3 p. 22.)

5. Inland was covered by a commercial general liability insurance policy provided by Essex for the period from December 18, 2001 through December 18, 2002. (Doc. 19 Ex. 1.)

6. **The policy provided:**
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
(Doc. 19 Ex. 1.)

7. The insurance policy contains a "Covered Operators Endorsement" (OM-vesselops (7/00)), which provides that "[n]o coverage is provided by this policy during in water vessel operation and use unless the vessel is operated by the person or person named below." No names are listed in that endorsement. (Doc. 19 Ex. 1.) A later endorsement reflects "[i]t is hereby understood and agreed form OM–Vesslops (7/00) [sic] is amended to include the following: Richard W. Meyer [and] George W. Parker, Jr." (Doc. 19 Ex. 1; Ocean Marine Gen. Endors.)

8. According to the insurance policy at issue, it did not apply to:
   a. " 'Property damage' to . . . [p]ersonal property in the care, custody, or

---

[1]. Ouachita Shores Group, LLC, was dismissed from the case on the motion of the Insurance Company of North America, and thus it incurred no liability.

control of the insured." (Doc. 19 Ex. 1.; Comm. Gen. Liab. Form p. 3.)

    b. "That particular part of any property that must be restored, repaired or replaced because 'your work'[2] was incorrectly performed on it." (Doc. 19 Ex. 1.; Comm. Gen. Liab. Form p. 3.)

9. The policy also provided that Essex's duty to defend did not apply to any "claim, suit, cost or expense arising out of … 'property damage' caused by acts of independent [c]ontractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits as provided by this policy." (Doc. 19 Ex. 1; Ocean Marine Mand. Endors. p. 2–3.)

10. Concurrently, a related suit was filed by the owners of the houseboat, Patrick and Linda Flowers, in an Arkansas state court, against the houseboat's manufacturer (Fantasy Custom Yachts), Inland Marine Sales, and Diamond Lakes Boat Transport.[3] In that case, the Flowers assert claims for breach of contract, breach of warranty, negligence, and fraud.

## Discussion

Essex moves for summary judgment, contending it is entitled to a declaratory judgment of no coverage to Inland for the damage to the Flowers' houseboat. Defendant Insurance Company of North America also moves for summary judgment, arguing Inland is entitled to coverage under the policy as the cited exclusions are not applicable.

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial, then the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

In interpreting the provisions of a contract, a trial judge is entitled to interpret the construction and legal effect of a contract as a question of law when its terms are unambiguous. *See Sweeden v. Farmers Ins. Group*, 71 Ark.App. 381, 387, 30 S.W.3d 783 (2000) (citing *Singh v. Riley's, Inc.*, 46 Ark.App. 223, 878 S.W.2d 422 (1994)). A contract is ambiguous when it is capable of more than one reasonable interpretation. See *Keller v. Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90 (1994). The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Tri–State Ins. Co. v. Sing*, 41 Ark.App. 142, 850 S.W.2d 6 (1993). Contracts of insurance should receive a

---

**2.** The insurance policy provides "your work" means "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." (Doc. 19 Ex. 1.) The term "your work" includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and [t]he providing of or failure to provide warnings or instructions." (Doc. 19 Ex. 1.)

**3.** This suit was brought in Pulaski County, Arkansas (Case No. CV–02–12103).

practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose. *See id.* Insurance policy provisions must be construed most strongly against the insurance company which prepared the policy. *See Smith v. Prudential Prop. and Cas. Ins. Co.,* 340 Ark. 335, 10 S.W.3d 846 (2000). If a reasonable construction would justify recovery under an insurance policy, it is the duty of the court to give that construction to the policy. *See id.*

Plaintiff makes four arguments as to why it should not be liable for the judgment rendered against its insured, Inland Marine Sales, LLC.[4]

### 1. Covered Operators

■ Essex first argues there is no coverage under the insurance policy since the houseboat was not being operated by a "covered operator" at the time of the damage. The policy expressly provided coverage during in-water vessel operation and use only for covered operators and excluded coverage to any unnamed individuals. (Doc. 19 Ex. 1; Ocean Marine Gen. Endors.) According to the policy and its related endorsements, the only covered operators were Richard Meyer and George Parker, who are the owners of Inland. Based on the Court's finding that Chris Warman was piloting the houseboat at the time the damage was incurred, Essex now asks the Court to determine the insurance policy with Inland did not extend to Chris Warman, as he was not a covered operator. (Doc. 19 Ex. 3 p. 5–6.) In response, Inland contends the "covered operators" exclusion does not apply to the damage to

the houseboat, since loading of the boat did not constitute "in water vessel operation and use." (Doc. 19 Ex. 1.)

In the underlying suit, the Court determined the damage to the houseboat occurred when it fell from trailer onto the loading ramp causing the engine compartment to take on water as it was then submerged at the stern. (Doc. 19 Ex. 3 p. 7.) The action of loading the boat required those involved to exercise their efforts to bring the boat on land rather than operations in the water. Moreover, the boat was mostly out of the water and on land when it fell from the trailer. (Doc. 19 Ex. 3 p. 6.) Therefore, we conclude that the loading of the boat does not qualify as "in-water vessel operation and use" under the terms of the insurance policy, and the "covered operators" exclusion does not apply.

### 2. Exclusion for Damage to Personal Property in the Care, Custody, or Control of the Insured

Essex next contends an exclusion listed in the General Commercial Liability Coverage Form for damage to "[p]ersonal property in the care, custody, or control of the insured" should preclude coverage for the judgment against Inland. Defendants argue this policy term is ambiguous and should be construed in their favor.

■ The Court notes that the meaning of this policy provision is difficult to understand. The policy does not define "personal property," and the relevant text of the policy does not discuss it. It is thus unclear whether this exclusion applies to *all* personal property, merely Inland's personal property, or only the personal property

---

4. Essex also asks the Court to determine whether the provisions of its insurance policy with Inland exclude any coverage or claims asserted in the separate case brought by the owners of the houseboat, Patrick and Linda Flowers, against Inland and others in an Arkansas state court. The Court makes no specific determinations here as to any assertions regarding that case.

of third parties. The policy term, "personal property," is capable of several meanings within this context.

The policy expressly excludes certain property damage to watercraft in a separate policy section. This separate section of exclusion includes coverage for a watercraft so long as it is not owned by the insured, is longer than twenty-six feet, and is not being used to carry persons or property for a charge. It would appear that if the parties intended to specifically exclude property damage to houseboats, they would have addressed it within the exclusion involving watercraft.

■ While there could be many interpretations of the policy exclusion for damage to "[p]ersonal property in the care, custody or control of the insured," the Court can only conclude the term to be ambiguous. In construing the contract most favorably to the insured, *see Smith v. Prudential Prop. and Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000), the Court determines this provision does not exclude the damage inflicted upon the houseboat. Accordingly, Essex has a duty to Inland to defend and pay the amount of the underlying judgment arising out of this incident.

### 3. Exclusion for Damage to Property that Must Be Restored, Repaired or Replaced as a Result of "Your Work"

■ Essex next argues the insurance policy excludes any liability for property damage that must be restored, repaired or replaced as a result of "your work." Defendants contend this exclusion is meant to apply only to those situations in which the insured provides services that subsequently require repair and ensuing damages.

The Court determines this provision cannot apply to exclude coverage for Inland's liability for the underlying judgment. A reading of the policy provision, which covers "[p]roperty damage to [t]hat particular part of any property," reflects that the provision applies only to those situations in which certain services are performed to a part or portion of property as opposed to the entire property. Therefore, this provision cannot exclude coverage for damage caused to the houseboat in this case while Inland was moving the boat rather than actually repairing it or servicing its parts.

### 4. Independent Contractors

Finally, Essex contends Inland's claim should be excluded as the policy provides an exclusion for property damage caused by the acts of independent contractors. Essex argues this exclusion should apply since the damage to the houseboat was inflicted by Chris Warman, an independent contractor. In response, Inland argues that the Court has determined Warman to be an agent of Inland in this case. (Doc. 30 p. 10.) Inland states that although the Court did not determine whether Warman was an employee or an independent contractor, the Court determined Inland was vicariously liable for his negligence. In addition, the Court determined Inland and Warman were jointly and severally liable along with Randy Schroeder and Diamond Lakes Boat Transport. (Doc. 19 Ex. 3 p. 22.)

■ In view of these findings, Chris Warman was not an independent contractor, as an entity cannot generally be held vicariously liable for the acts of an independent contractor. *See Stoltze v. Arkansas Valley Elec. Coop. Corp.*, 354 Ark. 601, 607, 127 S.W.3d 466 (2003). Although the Court found Warman to be an agent, as opposed to an independent contractor or an employee, the Court applied the doctrine of vicarious liability, and thus any application of the policy exclusion for inde-

pendent contractors would be inappropriate.

### *Conclusion*

Based on the foregoing, Defendant's Motion for Summary Judgment (Doc. 40) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 19) is DENIED, and we conclude Essex has both a duty to defend and a duty to pay for the outstanding claims of its insured, Inland Marine Sales, LLC, regarding the underlying judgment. Accordingly, these claims are DISMISSED WITH PREJUDICE, and the jury trial previously scheduled for the week of March 14, 2005 is cancelled.